J-S65031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.N.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.C.M., MOTHER | No. 1158 EDA 2015 |

Appeal from the Decree entered March 23, 2015,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000344-2014

| | |
|---|---|
| IN THE INTEREST OF: S.S.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.C.M., MOTHER | No. 1161 EDA 2015 |

Appeal from the Decree entered March 23, 2015,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000342-2014

BEFORE:  BENDER, P.J.E., SHOGAN, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED FEBRUARY 02, 2016**

Appellant, S.C.M., ("Mother") appeals from the decrees and orders entered on March 23, 2015 in the Court of Common Pleas of Philadelphia Family Court involuntarily terminating Mother's parental rights to S.S.M. (born June of 2010) and S.N.M. (born October of 2004) (collectively "the Children"), under section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, and changing the permanency goal for the Children to adoption under section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

---

[1] S.D.M. is Mother's third child.  The trial court clerk mistakenly printed a termination decree for S.D.M.  The trial court held a conference on June 9, 2015.  The trial court issued an order vacating the decree of involuntary

Since February of 2012, Department of Human Services of Philadelphia County ("DHS") has been involved with this family due to Mother's neglect of Children. On February 15, 2012, DHS received a General Protective Services ("GPS") report that alleged the Children were left home alone, the house was left in a deplorable condition, and Mother had a history of drug abuse. At that time, DHS obtained an Order of Protective Custody ("OPC"), and Children were placed into foster care. On February 17, 2012, a shelter care hearing was held, and Mother was referred for a drug screen, dual diagnosis assessment, and monitoring. On February 27, 2012, the Children were adjudicated dependent, and Mother was granted supervised visitation twice a week.

A Family Service Plan ("FSP") hearing was conducted on March 29, 2012. At that hearing, an FSP was developed. Mother's objectives were to: (1) learn and understand age appropriate behavior and expectation for Children at Achieving Reunification Center ("ARC"); (2) provide adequate and safe living conditions for Children by locating and obtaining suitable housing; (3) achieve and maintain recovery from drugs and alcohol, as well as sign releases to measure her progress; (4) stabilize mental health

---

termination of parental rights as to S.D.M. and reinstated the Department of Human Services of Philadelphia County's termination petition. Mother filed a praecipe to withdraw her appeal as to S.D.M on July 1, 2015. On July 6, 2015, the discontinuance was certified. On March 23, 2015, the trial court terminated the parental rights of K.R., S.N.M.'s father, to S.N.M. On March 23, 2015, the trial court terminated the parental rights of R.N., S.S.M.'s father, to S.S.M. K.R. and R.N. are not parties in this appeal, nor did they file their own separate appeals.

problems by participating in a parenting capacity evaluation; (5) maintain a relationship with the Children through regular visitation; and (6) meet regularly with a DHS social worker. Several permanency review hearings were held between 2012 and 2014.

On July 10, 2014, DHS filed petitions for termination of Mother's parental rights to the Children. On September 22, 2014, a termination hearing was held, and the hearing was continued to March 23, 2015. At the hearings, P.B., the Children's paternal grandmother; Mother; Kamilah Henry, a DHS case worker; and Monica Kras, a case manager for Lutheran Children Family Services, testified. On March 23, 2015, following the termination hearing, the trial court entered the decrees and order involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S. 2511(a)(1 & 8) and (b), and changing their permanency goal to adoption.

On April 17, 2015, Mother timely filed notices of appeal, along with concise statements of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On May 22, 2015, this Court *sua sponte* consolidated Mother's appeals. Mother raises the following issues:

1. Did the [t]rial [c]ourt err in terminating [Mother's] parental rights under [23] Pa.C.S. Section 2511?

2. Did the [t]rial [c]ourt err in finding that termination of parental rights best served the [C]hildren's developmental, physical and emotional needs under sub-section 2511(b)?

3. Did the [t]rial [c]ourt err in changing the [C]hildren's goal[s] to adoption?

J-S65031-15

Mother's Brief at vi.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa.Super.2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa.Super.2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super.2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super.2003).

- 4 -

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*). Here, we will focus on section 2511(a)(1).

Section 2511 provides, in relevant part, as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) of the Adoption Act as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition, Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's

- 5 -

explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super.2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super.2004), *appeal denied*, 872 A.2d 1200 (Pa.2005) (internal citations omitted).

- 6 -

On appeal, Mother argues that the trial court erred in terminating her parental rights to the Children. Mother's Brief at 1. Specifically, Mother contends that she was participating in drug, alcohol, and mental health treatment at the time of the hearing. *Id.* Mother also states that she visited the Children frequently while they were in foster care. *Id.*

In terminating Mother's parental rights pursuant to section 2511(a)(1), the trial court reviewed the record and the evidence presented, and concluded that it was clear from the record that, for a period of six months leading up to the filing of the petition for involuntary termination, Mother failed to perform any parental duties for the Children. Trial Court Opinion, 6/24/15, at 5. The trial court found:

> During the entire life of the case Mother has been minimally compliant with her [FSP goals]. The trial court found Mother to be minimally compliant with her FSP on May 22, 2012, August 21, 2012, November 19, 2012, February 12, 2013, May 14, 2013, and July 31, 2014. As to Mother's drug and alcohol objective, Mother did not successfully complete an appropriate program, as recommended by the CEU, to achieve her goal. The record revealed that Mother has a long history of substance abuse. One of Mother's Children reported that Mother was smoking Marijuana. Mother admitted she has tested positive for PCP, Marijuana and Xanax, and that she currently "struggles" with her addiction on a daily basis.
>
> Additionally, Mother has had problems with relapsing. The record established that Mother tested positive for Marijuana, Benzodiazepine, and PCP on November 19, 2012, and PCP on September 19, 2013. DHS social worker personally discussed with Mother her substance abuse. Mother has not successfully completed a drug and alcohol program that sufficiently fits her needs. In January 2013, Mother started a program at Gaundenzia but her attendance was inconsistent.

The program counselors deemed it not appropriate for Mother due to the fact that she required a higher-level program.

In June 2013, Mother also attended a program at Southwest New Stop, but again she did not complete it. Mother completed an inpatient program through Girard Medical Center from January 24, 2014, to February 28, 2014. However, the program was insufficient for Mother's needs and she was recommended to attend a higher-level program, which she never completed. Additionally, Mother has refused to maintain contact with DHS to sign releases about her inpatient drug and alcohol program.

In regard to Mother's stabilization of her mental health, the record revealed that Mother failed to attend her parenting capacity evaluation ordered by the trial court. Mother only completed half of her parenting capacity evaluation. Mother was rescheduled for a second appointment but she failed to attend. Throughout the life of the case, Mother was ordered numerous times to complete her parenting capacity evaluation. Mother was referred to ARC for housing but she failed to complete the workshops, and was discharged due to her lack of participation. Currently, Mother lacks housing. At ARC, Mother only completed her parenting classes. Consequently, Mother's lack of housing, successful completion of an appropriate drug and alcohol program, and not completing her parenting capacity evaluation, are the current barriers to Mother's reunification with [the] Children. Mother has also been very inconsistent with her visitation. In 2014, Mother was offered fifty-six visits but she only attended twenty-five. Mother did not confirm her attendance or provide any reason to support her lack of attendance. Mother stated that she was dependent upon one Father of the Children to obtain transportation for visiting [the] Children. However, the Lutheran agency social worker personally spoke to Mother on multiple occasions offering tokens to facilitate Mother's transportation. During the entire life of the case, Mother has not been ready or in a position to obtain unsupervised visits with [the] Children. The trial court actually changed Mother's visits to bi-weekly due to her inconsistency. Mother has also failed to meet her employment goal as established in her ISP. Mother admitted that she is not working.

Trial Court Opinion, 6/24/15 (citations omitted).

Ms. Henry testified that Mother's compliance with her FSP goals was minimal. N.T., 9/22/14, at 38. Ms. Henry testified that Mother's barriers to reunification included lack of stable housing, incomplete drug and alcohol programs, and a failure to complete the parenting capacity evaluation. *Id.* at 45. Ms. Henry further testified that Mother was discharged from the drug and alcohol treatment program Guadenzia for lack of participation. *Id.* at 34-35. Ms. Henry also testified that Mother's failure to complete the second half of the parenting capacity evaluation was due to her failure to attend the session. *Id.* at 70.

The record reveals that the trial court took into consideration that Mother failed to perform her parental duties by her lack of compliance. Trial Court Opinion, 6/24/15, at 7. Moreover, the trial court found that the Children have been in custody for over four years, and the conditions that led to their placement in DHS's care and custody still exist. *Id.* We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. Consequently, Mother's issue on appeal lacks merit, and

we find no abuse of discretion in the trial court's evaluation of Section 2511(a)(1) with respect to Mother.

In addition to basing termination of parental rights on at least one 2511(a) subsection, the trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b).  Section 2511(b) provides:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).  Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child.  *See In Re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa.Super.2005), *appeal denied*, 897 A.2d 1183 (Pa.2006).  "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  *Id.* at 1287 (citation omitted).  We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.  *See id*.

Here, the trial court found as follows:

- 10 -

[The] Children will not suffer any irreparable harm by terminating Mother's parental rights, and it is in the best interest of the Children to terminate Mother's parental rights. The Children have been in foster care, at the current pre-adoptive home, since October 2013 and November 2013, respectively.

The Children have improved their behavior under the foster parents['] care. [The] Children and foster mother have a strong parent/child bond. They love their foster parents and are happy with them. The Children look to the foster parents as their parents. Foster mother meets all of the needs of the Children, such as attending appointments and obtaining wrap-around behavior services. Mother and [the] Children have a relationship but not a parent/child bond. The [trial] court determined that the testimony of the DHS witnesses was credible. Additionally, Mother's parental rights are not being terminated solely on the basis of environmental factors. It is in the best interest of the Children to terminate Mother's parental rights and be adopted. Mother does not have the capacity to parent [the] Children. Mother is not able to sustain herself and provide for [the] Children['s] needs. [The] Children have been in foster care for too long and need permanency.

Trial Court Opinion, 6/24/15, at 9.

Ms. Henry and Ms. Kras testified that it is in the best interest of the Children to terminate Mother's parental rights, and the Children would not be harmed if Mother's rights were terminated. N.T., 9/22/14, at 49-50, 83. Ms. Henry testified that the Children are comfortable in their foster home. *Id.* at 49-50. She testified that there is a bond between the Children and the Foster Parents. *Id.* at 51. Ms. Henry further testified that S.S.M. loves his foster family. *Id.* at 49. Ms. Henry testified that S.N.M. does not have any issues or concerns about his foster family and is no longer disrespectful. *Id.* at 49-50. Moreover, Ms. Kras testified that there has been a major improvement in the Children's behavior while in their foster home. *Id.* at

- 11 -

80-81. Ms. Kras testified that the Children have developed a relationship with the Foster Parents. *Id.* at 83. Ms. Kras testified that the Children look to the Foster Parents as parents, not Mother. *Id.* at 96.

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and the Children which, if severed, would be detrimental to the Children, and that the termination of Mother's parental rights would best serve the needs and welfare of the Children. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

Next, Mother argues that the trial court erred in changing the permanency goals for the Children to adoption.

This Court has stated:

When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa. C.S.A. § 6301, *et seq.*, our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re B.S.*, 861 A.2d 974, 976 (Pa.Super.2004) (citation omitted).

Further,

In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of

- 12 -

evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In re A.K.*, 936 A.2d 528, 533 (Pa.Super.2007).

Section 6351(f) of the Juvenile Act sets forth the following pertinent inquiries for the reviewing court:

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable

J-S65031-15

efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f)(1)-(6), (9).

Additionally,

[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. Safety, permanency, and well-being of the child must take precedence over **all** other considerations. Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. These statutory mandates clearly place the trial court's focus on the best interests of the child.

*In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (emphasis in original) (citations and quotations omitted).

Here, the record reflects that the trial court appropriately considered the Children's best interests in deciding whether to change the permanency goal to adoption. The competent evidence supports the trial court's

- 14 -

determinations that the Children have been in foster care for four years, and that Mother "is unable and refused to place herself in a reunification position to parent [the] Children." Trial Court Opinion, 6/24/15, at 10. Moreover, the competent evidence supports the trial court's determination that the Children need to be in "a home that will keep them safe, [and] provide stability, permanency, and comfort." *Id.* Thus, we will not disturb these determinations. *See In re M.G.*, 855 A.2d at 73-74.

After a careful review, we affirm the decrees and orders terminating Mother's parental rights on the basis of Section 2511(a)(1), and (b) of the Adoption Act, and changing the Children's permanency goals to adoption under Section 6351 of the Juvenile Act.

Decrees and orders affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2016