861 A.2d 974 (2004)
In re: B.S.
Appeal of: Philadelphia Department of Human Services.
Superior Court of Pennsylvania.
Argued September 1, 2004.
Filed November 3, 2004.
*975 Deszeree E. Thomas, Philadelphia, for appellant.
Wayne R. Maynard, Philadelphia, for B.S.
Arnold F. Laikin, Philadelphia, for Mother of Minor Child, B.S.
BEFORE: MUSMANNO, OLSZEWSKI and POPOVICH, JJ.
OPINION BY POPOVICH, J.:
¶ 1 The Philadelphia Department of Human Services (DHS) appeals from the order entered on December 4, 2003, in the Philadelphia County Court of Common Pleas, which denied DHS's petition for subsidized permanent legal custodianship (SPLC). Upon review, we reverse the trial court's order and remand with instructions.
¶ 2 B.S. was born on February 12, 1998, to K.F. (Mother) and R.S. (Father). On December 30, 1998, DHS requested a restraining order and temporary custody of B.S. because Father physically abused Mother and because B.S. was caught in the middle of the domestic abuse. The trial court granted DHS temporary custody of B.S., and DHS developed a family service plan (FSP) with the goal of reunification. Mother met the requirements of the FSP, and B.S. was returned to her custody on February 26, 1999. On June 29, 1999, DHS filed a second request for a restraining order and temporary custody of B.S. because Mother was hospitalized for mental illness. The trial court granted DHS's request, and B.S. was placed in a foster home. Following her hospitalization, Mother signed a voluntary placement agreement. On July 7, 1999, B.S. was adjudicated dependant. While B.S. was in DHS's custody, the trial court ordered Mother to receive psychiatric counseling, and Mother was permitted supervised visits. Regular permanency hearings reviewing B.S.'s goal were conducted. On August 14, 2003, DHS filed a petition for a goal change from reunification to SPLC, pursuant to 42 Pa.C.S.A. § 6351(f.1)(3), because it felt that a permanent living arrangement *976 was best suited to B.S.'s safety, protection, and physical, mental, and moral welfare. A hearing was held on December 4, 2003, and the trial court denied DHS's petition for the goal change that same day.[1] DHS filed a timely appeal on December 30, 2003.[2] The trial court ordered DHS to file a statement pursuant to Pa.R.A.P. 1925(b), and DHS complied. The trial court filed an opinion.
¶ 3 On appeal, DHS presents the following questions for our review:
1. Whether the [trial] court abused its discretion by employing improper legal and evidentiary standards to evaluate [DHS's] request to change B.S.'[s] permanency goal from reunification to [SPLC]?
2. Whether the [trial] court abused its discretion in failing to consider the best interests of B.S. when it considered almost exclusively whether SPLC was a fair permanency outcome for K.F.; when it discounted the mental and emotional welfare of B.S.; and when it maintained that in order to grant SPLC, DHS must establish that reunification is impossible?
3. Whether the [trial] court abused its discretion in rejecting evidence of mother's prior unwillingness to comply with requirements that she receive treatment for her mental health problems that caused B.S. to be adjudicated dependent in the first place, particularly when mother's noncompliance caused B.S. to remain in foster care, during which time he has developed a strong bond with his foster mother?
DHS's brief, at 3.[3]
¶ 4 When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, et seq., our standard of review is abuse of discretion. In re A.P., 728 A.2d 375, 378 (Pa.Super.1999). When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record. Id., 728 A.2d at 378 (citation omitted).
¶ 5 DHS argues first that the trial court abused its discretion when it failed to consider B.S.'s best interests when denying the SPLC petition. We agree.
¶ 6 Section 6351(f.1) of the Juvenile Act lists the alternatives available to the juvenile court for the permanent placement of a dependant child. Upon a child's adjudication of dependency, the juvenile court may order reunification with the child's parent, guardian, or custodian. 42 Pa.C.S.A. § 6351(f.1)(1). If reunification with the child's parent, guardian, or custodian is not best suited to the child's safety, protection and physical, mental and moral welfare, the court may terminate parental rights and place the child for adoption. 42 Pa.C.S.A. § 6351(f.1)(2). If the court decides that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare, it may order the child to be placed with a legal custodian. 42 Pa.C.S.A. § 6351(f.1)(3). If the court decides that neither reunification, adoption, nor placement with a legal custodian are best suited *977 to the child's safety, protection and physical, mental and moral welfare, the court can place the child with a fit and willing relative. 42 Pa.C.S.A. § 6351(f.1)(4). Finally, the court may place the dependant child in another permanent living arrangement if DHS presents a compelling reason that any of the previous options are not suited best to the child's safety, protection and physical, mental and moral welfare. 42 Pa.C.S.A. § 6351(f.1)(5).
¶ 7 In 2001, Pennsylvania created a subsidy program, SPLC, which provides financial support for families willing to become permanent legal custodians pursuant to section 6351(f.1)(3). SPLC transfers permanent legal custody to the dependant child's legal custodian without requiring the termination of natural parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the dependant child's natural parents. To be eligible for SPLC, the legal custodian must meet all of the requirements for foster parenthood, submit to an annual eligibility evaluation, and have the ability to provide for the child without court supervision.
¶ 8 Upon the filing of a SPLC petition that alleges the dependant child's current placement is not suited to the safety, to the protection, and to the physical, mental, and moral welfare of the child, the trial court must conduct a permanency hearing within 30 days. 42 Pa.C.S.A. § 6351(e)(3)(ii)(D). At the hearing, the trial court must make numerous findings, most of which focus on the best interests of the dependent child. See 42 Pa.C.S.A. § 6351(f). Additionally, before the trial court may order SPLC, the trial court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare of the child. 42 Pa.C.S.A. § 6351(f.1)(3).
¶ 9 In the present case, the trial court denied DHS's SPLC petition because it found that DHS did not present a compelling reason that reunification would not best serve B.S.'s physical, mental or emotional health, safety, or moral welfare. Trial court opinion, 3/10/04, at 3.[4] This finding was in error because section 6351(f.1)(3) does not require DHS to provide a compelling reason that reunification is not best suited to the child's safety, protection and physical, mental and moral welfare.[5] Upon filing a SPLC petition, DHS is required merely to prove that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare. Therefore, the trial court placed a greater burden of proof on DHS than section 6351(f.1)(3) requires. As such, the trial court used an improper legal standard by denying DHS's SPLC petition on the grounds that DHS did not provide a compelling reason that reunification was not best suited to the child's safety, protection and physical, mental and moral welfare. Accordingly, we remand with instructions for the trial court to apply the legal standard set forth in section 6351(f.1)(3) when ruling on DHS's SPLC petition.
*978 ¶ 10 DHS argues next that the trial court abused its discretion when it failed to consider B.S.'s best interests when it denied the SPLC petition. We agree.
¶ 11 In its opinion, the trial court focused mainly on Mother's progress towards improving her parenting skills and efforts made by Mother towards building a relationship with B.S. See Trial court opinion, 3/10/04, at 3-4. Mother's progress toward alleviating the circumstances which necessitated the original placement is but one determination that the trial court must make under section 6351(f).[6] It is necessary for the trial court to make pertinent findings regarding all of the enumerated subsections under section 6351(f) to ensure that the dependant child's best interests are considered. The trial court's primary focus on Mother's parenting skills and her efforts made towards building a relationship with B.S. does not address adequately whether SPLC is in B.S.'s best interests. Therefore, we find the trial court erred by not addressing fully the required determinations under section 6351(f). Accordingly, we remand with instructions for the trial court to consider the pertinent factors enumerated in section 6351(f).
¶ 12 DHS's final argument is that the trial court abused its discretion when it rejected evidence of Mother's past non-compliance with the FSP. We disagree.
¶ 13 As we noted, pursuant to 42 Pa.C.S.A. § 6351(f), the trial court must make numerous findings at a permanency hearing, most of which focus on the best interests of the dependant child. These findings include "the extent of progress made toward alleviating the circumstances which necessitated the original placement." 42 Pa.C.S.A. § 6351(f)(3). At the hearing, DHS sought to produce evidence of Mother's past non-compliance with the FSP objectives. However, DHS claims that the trial court refused to allow this evidence. After reviewing the record, we have found that the trial court permitted DHS to present evidence of Mother's past non-compliance. The trial court stated that it wanted to know "what [Mother] has done from 1999 until now to help herself." N.T., 12/4/03, at 12. Furthermore, all counsel stipulated to the admission of all of the FSP reports into evidence. Id., at 35-37. These reports reflected Mother's past non-compliance with the FSP. Id., at 35-37. The trial court also permitted evidence of Mother's inconsistent attendance at her FSP-directed therapy appointments. Id., at 62-63. This evidence demonstrates that the trial court did permit DHS to present evidence of Mother's past non-compliance with the FSP. Therefore, DHS's claim fails.
¶ 14 As we have found that the trial court applied an incorrect legal standard when it denied DHS's SPLC petition and *979 failed to make the appropriate determinations pursuant to section 6351(f), we reverse the trial court's December 4, 2003 order and remand with instructions for the trial court to hold a new hearing, apply the legal standard pursuant to 42 Pa.C.S.A. § 6351(f.1)(3), and to address all pertinent factors enumerated in 42 Pa.C.S.A. § 6351(f) when making its determination.
¶ 15 Order reversed. Case remanded with instructions. Jurisdiction relinquished.
NOTES
[1] Father was not present at the December 4, 2003 hearing.
[2] A denial of a petition for a goal change is considered final. See In the Interest of H.S.W.C.-B., 575 Pa. 473, 836 A.2d 908, 911 (2003). Therefore, the trial court's order is appealable.
[3] We have renumbered DHS's issues.
[4] DHS concedes that adoption was not an option because Mother complied with her FSP goals. DHS's brief, at 10.
[5] The trial court did not cite a specific subsection of 42 Pa.C.S.A. § 6351(f.1) when it denied the SPLC petition for DHS's failure to present a compelling reason that reunification would not serve B.S.'s physical, mental or emotional health, safety or moral welfare. The only subsection of 42 Pa.C.S.A. § 6351(f.1) which requires DHS to provide a compelling reason is subsection (f.1)(5). However, because the petition at issue was an SPLC petition, the standard set forth in 42 Pa.C.S.A. § 6351(f.1)(3) is applicable in this case.
[6] Section 6351(f) of the Juvenile Act reads, in pertinent part:

(f) Matters to be determined at permanency hearing.  At each permanency hearing, a court shall determine all of the following:
(1) The continuing necessity for and appropriateness of the placement.
(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
(4) The appropriateness and feasibility of the current placement goal for the child.
(5) The likely date by which the placement goal for the child might be achieved.
(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
(6) Whether the child is safe.
42 Pa.C.S.A. § 6351(f).