J-S21031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.A.H., A/K/A D.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: E.H., FATHER | |
| | No. 3011 EDA 2015 |

Appeal from the Decree September 9, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000262-2015; CP-51-DP-0002032-2012

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 02, 2016**

Father appeals from the September 9, 2015, decree entered in the Court of Common Pleas of Philadelphia, Family Court, Juvenile Division, which involuntarily terminated his parental rights to his minor daughter, D.A.H. ("Child"), born in September of 2003. In addition, Father appeals from the order entered on that same date, which changed Child's permanency goal to adoption.[1] We affirm.

Father has an extensive criminal history, and following his January 21, 2010, arrest in connection with a homicide, Father was convicted of second-degree murder and sentenced to life in prison. On October 17, 2012, the

_____

[1] The parental rights of Child's mother, R.N., were terminated by a separate decree. Mother is not a party to the instant appeal and she has not filed a separate appeal.

*Former Justice specially assigned to the Superior Court.

Department of Human Services of Philadelphia Count ("DHS") received a General Protective Services report alleging that, on October 10, 2012, Mother was admitted to Interim House for drug and alcohol treatment. However, the report further alleged that, on October 16, 2012, Mother left the treatment facility after she was found to be in possession of drug paraphernalia and tested positive for narcotics.

After learning Mother was not complying with substance abuse treatment, DHS filed a dependency petition, and on November 19, 2012, Child was adjudicated dependent. Child remained in Mother's physical custody but under DHS's supervision, and Mother was referred to the Clinical Evaluation Unit.

On August 19, 2013, at a permanency review hearing, the trial court discovered that Child was residing with Mother at the house of one of Mother's friends. DHS subsequently learned that one of the members living in the house had been convicted of aggravated assault, and Child did not have appropriate bedding in the house. Accordingly, the matter proceeded to another permanency review hearing on November 20, 2013, at the conclusion of which the trial court concluded it was in Child's best interest to be removed from Mother's care. During the November 20, 2013, hearing, Mother revealed to the court Child's Father's identity.

On February 19, 2014, at a permanency review hearing, the trial court ordered a Parent Location Services ("PLS") search to be conducted in order

to find Father; however, Father was unable to be located. The trial court noted that Father had not availed himself of DHS. Following a permanency review hearing on May 20, 2014, the trial court ordered another PLS on Father and the trial court again noted that Father had not availed himself of DHS. At a subsequent permanency review hearing on February 13, 2015, the trial court found that Father was incarcerated at SCI Greene, a State Correctional Institution, under the alias of E.L.

On April 15, 2015, DHS filed a petition for the involuntary termination of Father's parental rights to Child, and on August 10, 2015, the trial court held a hearing regarding the termination of parental rights, as well as whether a goal change was necessary. At the hearing, Father, Megahn Vanblarcum, a case manager for Community Umbrella Agencies ("CUA"), Child, and Margaret Littlefoot, an outcome specialist for CUA, testified. Mother was not present at the hearing.

Father was represented by counsel and available from the prison via telephone. Father admitted that he has been in prison since January of 2010, and the last time he saw Child was at Christmas time in 2009. N.T., 8/10/15, at 18. He indicated that, after he went to prison, he lost contact with Mother and had no contact with Child. *Id.* He had not seen, spoken to, or written to Child in the five years prior to the hearing. *Id.* at 19, 26. Father admitted that he is not with Child to make sure she is safe and that

the first time he wrote a letter to DHS inquiring about Child was when he learned of the termination proceedings. *Id.* at 20-21.

He testified that, prior to going to prison in January of 2010, he worked "under the table" and received mental health services. *Id.* at 23-24. Also, prior to January of 2010, he did not live with Mother and Child, although he would visit Child a "couple of times throughout the month." *Id.* at 19, 24. However, he admitted that, prior to January of 2010, he had been in prison for other periods of Child's life, although generally not longer than eight or nine months at a time. *Id.* at 22. Father indicated he had filed a criminal appeal from his life sentence and, in the event he was released, he wanted full custody of Child. *Id.* at 23.

Ms. Vanblarcum testified she made outreach efforts to Father in the beginning of May of 2015. *Id.* at 32. She confirmed that Child is in a pre-adoptive home and Child has not expressed any wish to contact Father. *Id.* at 33-35.

Child, who was at the time eleven years old, testified she has had no contact with Father for five or six years. *Id.* at 38-39. As to whether she wanted to contact him during this time, she indicated her mind "wasn't really set on it." *Id.* at 39. Child testified she was happy with her current placement; however, she would like contact with Father in the form of letters or telephone calls. *Id.* at 40-41.

Ms. Littlefoot testified that, in February of 2015, she sent an outreach letter to Father at the SCI Greene facility informing him that Child was in DHS's care. *Id.* at 41-42. Father did not respond to her until July of 2015. *Id.* at 43.

The matter continued to another hearing on September 9, 2015, at which Ms. Vanblarcum again testified. She indicated that Child had been having a rough time since the last hearing, she was removed from her foster home, and she was placed with Paternal Aunt. N.T., 9/9/15, at 13-15. Ms. Vanblarcum indicated Child wants to remain with Paternal Aunt. *Id.* at 15. Ms. Vanblarcum testified it would be in Child's best interest for the goal to be changed to adoption. *Id.* at 18-19.

The trial court subsequently filed a decree involuntarily terminating Father's parental rights to Child and an order changing Child's permanency goal to adoption.

On November 7, 2015, Father timely filed notices of appeal, along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issues, which we set forth verbatim:

1. Did the trial court abuse its discretion when terminating Father's parental rights under [Subection] 2511(b) without taking into account the emotional needs of Child, and relying solely, for the purpose of satisfying the requirements of "needs and welfare of child" of the subsection, on the testimonies of the social worker and not considering Child's testimonies, and, therefore, terminating Father's parental rights on non[-]competent or insufficient evidence?

2. Did the trial court err in changing Child's [p]ermanency [g]oal to [a]doption when the prospective adopting family had not been certified and creat[ing] the risk of making Child an orphan subsequent to the termination of [F]ather's parental rights?

Father's Brief at 2.

Initially, we set forth our standard of review regarding orders terminating parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013) (quotations, quotation marks, and citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in S[ubs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to S[ubs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature

and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Subsections 2511(a)(1), (2), (5), (8), and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*    \*    \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*    \*    \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to [S]ubsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).

In the case *sub judice*, Father does not challenge, and there is no dispute, that the record sufficiently establishes the grounds for termination under Subsection 2511(a). Rather, Father focuses his challenge on the trial court's determination that termination of Father's parental rights was appropriate under Subsection 2511(b).

We have discussed our analysis under Subsection 2511(b) as follows:

S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has

- 8 -

explained, S[ubs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis.  While a parent's emotional bond with his or her child is a major aspect of the [S]ubsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  Additionally, this Court [has] stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015)

(quotation, quotation marks, and citations omitted).

In the case *sub judice*, the trial court found, in relevant part, the following:

The record established that Child would not suffer any irreparable harm by terminating Father's parental rights.  Father and Child do not have a parent/child bond due to lack of visitation and contact.  The record established that Father has been incarcerated since January [of] 2010, and that his last visit with the Child took place in 2009, approximately six years ago.  Father admitted on August 10, 2015, under oath, that he last saw the Child in 2009.  Accordingly, the last time [C]hild directly interacted with her Father occurred when she was six years old.  The trial court did not abuse its discretion in determining that Child's best interest will be served by terminating Father's parental rights given an absence of a bond with Father, Father's long term incarceration, and the fact Child does not speak or ask about her Father.  Father is incarcerated due to his own actions, and the record established that Father would not be able to establish a bond with the Child in the foreseeable future due to his confinement for life.  Child has been in foster care for too

long and needs permanency and stability.  Father is serving a life sentence.  Father's continued incarceration may be a factor into a determination of [C]hild's best interest.  Recently, [C]hild was removed from her current placement. CUA has found the [P]aternal [A]unt to be an appropriate permanent resource for [C]hild.  Child wants to be with her aunt.  Child needs stability. The trial court approved the placement.

Trial Court Opinion, 10/13/15, at 4 (citations omitted).

We find no abuse of discretion in this regard.  More specifically, contrary to Father's argument, we conclude the trial court adequately considered the needs and welfare of Child, as well as properly found there was no parent-child bond.  **See In re K.Z.S.**, 946 A.2d 753, 763 (Pa.Super. 2008) (indicating when there is no evidence of any bond between the parent and child it is reasonable to infer that no bond exists).  To the extent Father focuses on Child's testimony that she would like to receive telephone calls or letters from Father, the record reveals Father was "unable to satisfy the irreducible minimum requirements of parenthood."  **See In re T.D.**, 949 A.2d 910, 920-23 (Pa.Super. 2008).  Simply put, "[t]his Court will not prolong instability for Child when it is clear that . . . Father will be unable to provide for Child's basic needs in the near future."  **In re K.H.B.**, 107 A.3d 175, 183 (Pa.Super. 2014) (citation omitted).

Father next argues the trial court erred in changing the permanency goal for Child to adoption.

This Court has stated:

When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa.

- 10 -

C.S.A. § 6301, *et seq.*, our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re B.S.*, 861 A.2d 974, 976 (Pa.Super. 2004) (citation omitted).

Subsection 6351(f) of the Juvenile Act sets forth the following pertinent inquiries for the reviewing court as it pertains to the disposition of a dependent child:

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

*       *       *

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that

- 11 -

aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child.

> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

Additionally,

The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. Safety, permanency, and well-being of the child must take precedence over **all** other considerations. Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. These statutory mandates clearly place the trial court's focus on the best interests of the child.

*In re S.B.*, 943 A.2d 973, 978 (Pa.Super. 2008) (emphasis in original) (quotations, quotation marks, and citation omitted).

Here, the record reflects that the trial court appropriately considered Child's best interests in deciding whether to change the permanency goal to

- 12 -

adoption. The competent evidence in the record supports the trial court's determinations that Child has been in foster care for twenty-one months, and that Father "will remain incarcerated for life and Father's parole is not only uncertain but improbable." Trial Court Opinion, filed 10/13/15, at 5. Moreover, the trial court found "it is in the best interest of Child to be in a home that will keep her safe, provide stability, permanency and comfort for Child's needs and welfare." *Id.* We find no abuse of discretion in this regard.

For all of the foregoing reasons, we conclude the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child. Moreover, we conclude the trial court did not abuse its discretion in changing Child's permanency goal to adoption.

Decree and Order Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2016