J-S43017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 97 MDA 2016 |

Appeal from the Order Entered January 4, 2016
In the Court of Common Pleas of Lancaster County
Juvenile Division at No(s): CP-36-DP-0000251-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 23, 2016**

Appellant, E.S. ("Father"), appeals from the permanency review order entered January 4, 2016, in the Court of Common Pleas of Lancaster County, changing the permanency goal for his daughter, N.M.D. or N.D. ("Child") (born in September 2014), to adoption under § 6351 of the Juvenile Act.[1] We affirm.

Mother has a long history with Lancaster County Children and Youth Social Service Agency (the "Agency") since well before Child's birth, involving Mother's two other children. On May 16, 2014, the Agency received

_____

[1] T.N.A.D. a/k/a T.N.D. ("Mother") is not a party to this appeal nor did she file a separate appeal.

a report that Mother was pregnant, using drugs, not receiving any prenatal care, and prostituting herself for a place to live. The Agency scheduled a home visit in May 2014, but the address provided to them was a place of business.

On September 13, 2014, the Agency discovered Mother gave birth to Child and tested positive for PCP, "a 'dissociative anesthetic'" whose "effects are trance-like, and patients experience a feeling of being 'out of body' and detached from their environment." Partnership for Drug Free Kids, available at http://www.drugfree.org/drug-guide/pcp/ (last visited 8/10/16). Although paternity was undetermined, Father was present for Child's birth, which was the first and only time he ever saw Child.

Mother provided the Agency with names of several men as putative fathers for Child. On September 16, 2014, Child was placed into the temporary physical and legal custody of the Agency. On September 24, 2014, the trial court accepted the master's recommendation that Child continue in foster care. Child was adjudicated dependent at an adjudication hearing on October 20, 2014. Mother was not offered a child permanency plan for reunification.

On September 21, 2014, nine days after Child's birth, Father was arrested and charged with possession with intent to deliver, possession with intent to distribute narcotics, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. The Agency

discovered Father's location in prison and obtained a court order for genetic testing between Father and Child. The results of the genetic test established paternity between Father and Child.

On November 5, 2014, a child permanency plan was court-approved for Father, which set the goal of reunification with Child. Father's goals were: (1) to cooperate with the Agency to assess his current situation; (2) to improve mental health functioning to the extent he can care for Child; (3) to use good parenting skills; (4) to be financially stable in order to provide for himself and Child; (5) to obtain a home free and clear of hazard; and (6) to maintain ongoing commitment to Child.

On March 26, 2015, Father had a probation/parole violation hearing, resulting in a state prison sentence of one to two years. While incarcerated, Father sent six letters to the Agency pursuant to his ongoing commitment objective. Father also completed one relevant program, Violence Prevention, Moderate Intensity. Father was enrolled in a therapeutic community program, providing cognitive behavioral therapy, but was dismissed for, of all things, putting laxatives in the drinks of other program attendees. Father gained re-entry into the program only to be terminated again for smoking a cigarette in his cell. Father's initial release date, September of 2015, was deferred because of these two prison infractions. Father will be released from jail at the earliest in May 2016 or at the latest in September 2016.

On July 30, 2015, the Agency filed a petition to involuntarily terminate Mother's and Father's parental rights to Child. Mother signed a consent to adoption. On September 21, 2015, the trial court conducted a termination hearing and issued a decree terminating Mother's parental rights only. The trial court rescheduled the hearing for Father because he was unable to participate due to a connection problem at the prison.

At the rescheduled termination hearing on January 4, 2016, Ashley Zuver, the Agency caseworker, and Father testified. Father participated by telephone from Laurel Highlands Correctional Institution and was represented by counsel. On the same day, the trial court entered a decree involuntarily terminating Father's parental rights to Child.[2] Thereafter, the trial court immediately held a permanency review hearing, ordering Child to remain at the pre-adoptive resource home, and changing Child's permanency goal to adoption.

Father filed a timely notice of appeal from the order changing the goal to adoption. Father raises the following issue:[3]

---

[2] Father also filed a notice of appeal from the decree involuntarily terminating his rights to Child, which was assigned a separate docket number. *See In Re N.M.D.*, 90 MDA 2016.

[3] We note Father filed one brief, raising two issues in the statement of questions involved: (1) challenging the decree terminating his parental rights; and (2) challenging the order changing the child permanency goal to adoption. Because Father's appeal challenging the termination of his parental rights has been assigned a different docket number, Father's first

*(Footnote Continued Next Page)*

> 1. Did the best interest of [C]hild dictate a change in the permanency goal from reunification to adoption when Father made efforts to foster a relationship with his daughter from prison, his release was within eight months, there was no indication that he could not nor would not complete his plan shortly after release, and there was no evidence or finding by the court that she is bonded to the foster parents?

Father's Brief, at 11.

This Court has stated that

> [w]hen reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa. C.S.A. § 6301, *et seq.*, our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re B.S.*, 861 A.2d 974, 976 (Pa. Super. 2004) (citation omitted).

Further,

> [i]n order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citation omitted).

*(Footnote Continued)* _____

issue is omitted here as it was addressed in the companion appeal docketed at 90 MDA 2016.

Section 6351(f) of the Juvenile Act sets forth the following pertinent inquiries for the reviewing court:

**(f) Matters to be determined at permanency hearing. —**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

Additionally,

[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. Safety, permanency, and well-being of the child must take precedence over **all** other considerations. Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. These statutory mandates clearly place the trial court's focus on the best interests of the child.

*In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (emphasis in original) (citations and quotation marks omitted).

On appeal, Father argues that neither the maintenance of Child's relationship with her half-sister nor the expected period that she would have to wait for Father to be in a position to parent her, support the necessity of changing the goal from reunification to adoption.

The trial court found that

[t]he current placement is ideal for [Child]. She is in a resource home where she has been for a substantial period of time and where she can stay indefinitely. Also in the home is her older sister, with whom she has a significant bond. The resource parents want to adopt both sisters. Father's compliance with the child permanency plan has been non-existent. It is possible that there will be a delay of perhaps nine months before he is

released and can start on the plan; the actual length time for its completion is unknown.

The original placement was on account of Mother's failure to parent this [C]hild adequately; Mother's rights have been terminated, but Father is not now, and may never be, ready to take her place, leaving [C]hild dependent. He has never parented her. [Child] has never met her father and has no bond whatsoever with him. The [c]ourt is hard pressed to think of a reason why the goal should not be changed to adoption. It is unfortunate for Father that he is in a situation in which he has never had an opportunity to form a relationship and bond with his daughter, but that is not [Child's] doing. She should not be forced to wait for him to get out of jail, to take the required therapy and instruction, to maintain a stable life, to get a job and an appropriate home, and to then be removed from her permanent home with her sibling and given to a man she does not know. The [c]ourt believes a change of goal is not only appropriate in this case, but necessary for [Child's] best interest.

Trial Court Opinion, 2/10/16, at 6-7.

The record reflects that the trial court appropriately considered Child's best interests in deciding whether to change the permanency goal to adoption. The evidence amply supports changing the permanency goal to adoption. Father has completed close to none of his child permanency plan, his prison term has lengthened due to his volitional misconduct, Child and Father have no bond whatsoever, and Child is doing well in a pre-adoptive resource home with Half-Sister, with whom she has a substantial bond. Additionally, the trial court terminated Mother's parental rights, and now, Fathers parental rights have been terminated, which also supports changing the permanency goal to adoption. **See In Re N.M.D.**, 90 MDA 2016. Thus,

we will not disturb these determinations. ***See In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004).

Accordingly, because we conclude that the trial court did not abuse its discretion by changing the child permanency goal to adoption under § 6351 of the Juvenile Act, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2016