J-S58015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 755 WDA 2019 |

Appeal from the Order Entered April 21, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s): CP-02-DP-0001087-2017

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.: **FILED DECEMBER 20, 2019**

Appellant, D.P. ("Father"), files this appeal from the permanency review order dated April 2, 2019, and entered April 21, 2019, in the Allegheny County Court of Common Pleas, changing the permanent placement goal of his minor, male child, J.H., born in February 2014 ("Child"), to permanent legal custody ("PLC") pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1] After careful review, we affirm the trial court's order.

This appeal concerns only Father's status; Child's mother, A.H. ("Mother"), supports the change in the placement goal, and asks this Court to affirm the order. **See** N.T., 4/2/19, at 35-37 (Mother's counsel summarizing

---

[1] Child's mother, A.H. ("Mother"), supported the granting of permanent legal custody. **See** N.T., 4/2/19, at 21, 35-37. Mother did not file a separate appeal. Additionally, with regard to the instant appeal, Mother submitted a letter indicating that she would not be submitting a brief but wished to see the trial court order affirmed.

Mother's position was to have Child remain with his foster parents, S.C. and M.C.); Letter from Mother's counsel, 9/27/19 ("Mother does wish to see the trial court affirmed"). Child was adjudicated dependent on December 20, 2017, and has been living with S.C. and M.C. since December 6, 2017. At that time, both Mother and Father were incarcerated and unable to care for Child.

Father was incarcerated from 2014 to 2019 due to convictions for drug trafficking and illegal possession of firearms. He was briefly paroled in the summer of 2018, but was determined to have violated the conditions of his parole. Father was paroled again on February 7, 2019.

Father has consistently visited with Child while on parole. However, these visit always occurred during Father's grandmother's visitation with Child. Father failed to heed the court's advice that he establish his own, independent visitation schedule with Child.

At the April 2, 2019 permanency review hearing, the court heard testimony that child was suffering negative behavioral consequences due to the lack of stability and permanency. Due to this testimony, the court orally ordered that permanent legal custody of Child be granted to foster parents, and ordered the parties to propose new visitation schedules that would increase Child's weekend time in his foster home while supporting development of Child's relationship with Father.

On April 17, 2019, the court issued an order to provide Father with one weekend overnight visit and one weekend day visit per month with Father.

These visits would be supervised by Father's grandmother. The court also ordered that Father receive one weeknight visit per week, to be supervised by a service provider.

Thereafter, on April 21, 2019, the court entered the written order changing Child's placement goal to permanent legal custody with foster parents. Father then filed this timely appeal.

On appeal, Father raises the following issues for our review:

1. The [t]rial [c]ourt erred and/or committed a fatal error and/or abused its discretion changing the goal from reunification to permanent legal custodianship after only (11) months of the child being in [p]lacement.

2. The [t]rial [c]ourt erred and/or committed a fatal error and/or abused its discretion by ruling that changing the goal from reunification to permanent legal custodianship is in the best interest of the minor child.

3. The [t]rial [c]ourt erred and/or committed a fatal error and or abused its discretion by finding that the modified visitation schedule is in the best interest of the minor child.

Father's Brief at 7.

As we stated in **In re K.J.**, 27 A.3d 236 (Pa. Super. 2011):

Our standard of review of an order granting [PLC] is abuse of discretion.

When reviewing such a decision[,] we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interest and not those of his or her parents.

At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and

- 3 -

appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

These statutory mandates clearly place the trial court's focus on the best interests of the child.

In addition[, a]lthough bound by the facts as found by the trial court and supported by the record, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for an abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and the witnesses.

*In re K.J.*, 27 A.3d at 241 (citations omitted, second and third brackets in original).

As further explained by this Court in *In re S.H.*, 71 A.3d 973 (Pa. Super. 2013),

In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated. The custodian is typically provided a financial subsidy for the child by the local county children and youth agency. The subsidy component is generally an integral component when permanent legal custody is considered a viable option.

…

[T]he court must conduct a hearing and make specific findings focusing on the best interests of the child. In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare.

…

In those cases where reunification is not appropriate, adoption is viewed as providing the greatest degree of permanence. In some situations, however, adoption may not be a realistic or appropriate option. For example, some older children, who are well familiar with and have affection for their birth parents, may object to termination proceedings. There are also special needs children for whom placement in an adoptive home is extremely difficult. Consequently, in those cases, attention may be focused on alternative permanency options such as guardianship, or custodial arrangements [PLC], preferably with relatives.

*In re S.H.*, 71 A.3d at 977-78 (citations and footnotes omitted).

Furthermore,

[a] trial court must utilize the highest civil standard of proof, "clear and convincing evidence," when addressing a petition to terminate parental rights. When a trial court considers and grants a permanent legal custody order, it does not engage in this heightened review process. Upon filing a [PLC] petition, [the petitioner] is required merely to prove that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare. Clearly, the procedural and substantive safeguards utilized to protect the rights of parents in termination cases are not applicable in PLC cases.

*Id.* at 979-80 (citations, internal quotation marks, and footnote omitted).

Lastly, we recognize that at each permanency review hearing, the court is additionally to consider "whether the visitation schedule for the child with the child's guardian is adequate, unless a finding is made that visitation is

contrary to the safety or well-being of the child." Pa.R.J.C.P. 1608(D)(1)(q). Moreover, in awarding PLC, "[w]hen deemed appropriate, the trial court has the power to permit continued visitation by the [dependent] child's natural parents." ***In re B.S.***, 861 A.2d 974, 977 (Pa. Super. 2004). "The polestar and paramount concern in evaluating parental visitation, in dependency as well as non-dependency situations, is the best interests and welfare of the children." ***In re C.J.***, 729 A.2d 89, 94 (Pa. Super. 1999) (citations omitted).

Father first argues that the trial court erred in changing Child's goal after Child was only in placement for eleven months. However, the trial court found that Child was placed on December 6, 2017. The court therefore determined that at the time of the April 2, 2019 hearing in question, "Child had been in placement for four days less than 16 months." Trial Court Opinion, 7/15/19, at 14. Father concedes in his brief that Child's goal was changed after being in placement for sixteen consecutive months. **See** Father's Brief at 8-9.

The court then continued, asserting that it was appropriate after fifteen months to asses changing Child's permanency goal.

> Given Child's 16 consecutive months in placement, the law required the Court to consider changing Child's permanency goal. As a matter of course, the Juvenile Act mandates that the trial court consider the appropriateness of the permanency goal at each permanency review. When parents are actively pursuing their service plan goals and making progress, trial courts frequently and appropriately maintain reunification as the goal at the early permanency reviews. The law, however, recognizes that children cannot wait indefinitely while their parents work to fulfill their goals. Consequently, at the 15-month point, the law requires CYF to initiate termination of parental rights proceedings as the preferred path to achieve permanency, unless an

enumerated exception applies. Here, CYF did not pursue termination of parental rights, because CYF and the other participants, including Foster Parents, all recognize the value and importance to Child of maintaining his relationship with Mother and of developing his relationship with Father. However, the Court's hearing and decision in this matter occurred at precisely the time specified by law as the appropriate time to focus on and weigh heavily a child's need to achieve permanency.

Trial Court Opinion, 7/12/19, at 14-15.

Father, however, asserts that the trial court abused its discretion in changing Child's goal as "Father only had seven weeks to demonstrate his ability to take care of his son." Father's Brief at 8-9. We disagree. The court appropriately considered Father's limited experience visiting Child as well as Child's need for permanency and stability. The court noted that Father is just beginning the process of forming a relationship with Child. **See** Findings of Fact, 4/22/19, at ¶¶ 21, 25. The court's findings are well supported by the record and do not constitute an error of law or abuse of discretion. Father's claim is without merit.

We address Father's second and third arguments together, as they are interrelated.[2] In these two arguments, Father renews his contention that he did not have sufficient time to demonstrate his fitness to have custody Child. Indeed, the trial court found that Father's brief period of release from incarceration was insufficient to establish that he was able to provide Child with stability. **See id**., at ¶ 22. Further, in contrast to Child's relationship and

---

[2] We observe that the trial court addressed these issues together as well.

comfort with his foster parents, Child's relationship with Father was still new and developing. ***See id***., at ¶¶ 22-26.

The trial court stated that its decision rested on two primary factors. First, the limited time Father had since his release from incarceration did not allow Father to demonstrate his ability to provide a stable environment that provided for Child's needs. ***See*** Trial Court Opinion, 7/12/19, at 8. Second, Child's current and continued well-being depended on the maintenance of the security and stability provided by foster parents "while developing a relationship with Father." ***See id***.

Both of these conclusions are well supported by the record. Further, they do not represent an error of law or abuse of discretion. The court's primary consideration was the best interests of Child. Father's arguments shift that focus to Father's rights to establish his ability to care for Child. The court properly rejected these arguments and instead crafted a solution that allowed Father the opportunity to establish a relationship with Child and demonstrate an ability to care for Child, while also addressing Child's needs. Father's second and third arguments merit no relief.

In sum, we discern no abuse of discretion in the goal change. The evidence supports the conclusion that the court's grant of permanent legal custody and modification of visitation are in Child's best interests and best suited to the protection and physical, mental and moral welfare of Child. As we have stated, "The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply

cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." ***In re A.B.***, 19 A.3d 1084, 1089 (Pa. Super. 2011) (citations and quotation marks omitted).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2019