J-S29017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.W., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 509 WDA 2022 |

Appeal from the Order Entered April 5, 2022
In the Court of Common Pleas of Erie County
Juvenile Division at CP-25-DP-0000206-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: SEPTEMBER 7, 2022**

S.R. (Mother) appeals from the juvenile court's order changing the permanency goal for J.W., Jr. (Child), from reunification to adoption.[1]

The juvenile court summarized the case history as follows:

> [Child] became involved informally with the Erie County Office of Children and Youth ("the Agency") at the time of his birth in August 2020 due to Mother's lack of stable housing and Mother's positive test for marijuana (THC) at the time of [C]hild's birth.  **See** Recommendation for Shelter Care, 09/28/2021. [C]hild also tested positive for THC at birth.  **Id.**  Consequently, the Agency offered Mother ongoing services, but Mother failed to utilize those services.  Regrettably, [C]hild was again exposed to the Juvenile Dependency system in 2021 due to Mother's lack of progress and out of concern for [C]hild.  On September 22, 2021, it was reported to the Agency that [Mother] still did not have stable housing and was again abusing alcohol and marijuana.  **See**

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] J.W., Sr. (Father) has not been involved in Child's life and did not appeal the goal change.  **See** Juvenile Court Opinion, 6/1/22, at 1.

Application for Emergency Protective Order, 09/22/2021. …
Mother admitted to having a substance abuse history involving K2
(synthetic marijuana), cocaine, and THC. *Id.* As indicated above,
Mother used THC during her pregnancy, as [C]hild was born
exposed to THC. *Id.*

Based on these and other facts, an Emergency Protective
Order was issued by the [juvenile c]ourt on September 22, 2021.
In the Order, the [c]ourt found that removal of [C]hild was
necessary for the welfare and best interest of [C]hild. *See*
Emergency Protective Order, 09/22/2021. Also, "[d]ue to the
emergency nature of the removal and safety consideration of the
child, any lack of services to prevent removal were reasonable."
*Id.* Consequently, [Child] was placed in the temporary protective
physical and legal custody of the Agency and placed in a foster
home as there was no viable family or kinship resource.

Juvenile Court Opinion, 6/1/22, at 2.

On September 24, 2021, the Agency filed a dependency petition alleging

Child was without proper parental care or control. The Agency requested a

finding of aggravated circumstances based on Mother's "extensive history"

with the Agency, her "minimal progress," and the involuntary termination of

Mother's parental rights to four children on November 12, 2019. *See id.* at

4.

The juvenile court held a dependency hearing on October 22, 2021.

Mother stipulated to the allegations of dependency. *Id.* at 6. The court

adjudicated Child dependent, and "determined that aggravated circumstances

existed against Mother due to the involuntary termination of Mother's parental

rights to four (4) of her other children in November 2019." *Id.* (citation

omitted). Child's placement goal was "return to parent or guardian," *i.e.*,

reunification, with the "projected date by which the goal for child might be

achieved: uncertain." Order of Adjudication and Disposition, 10/27/21, at 2. The court directed Mother to refrain from using drugs and alcohol, submit to random urinalysis tests, and participate in mental health treatment. *Id.* The court scheduled a permanency review hearing for March 30, 2022, "to allow [Mother] sufficient time to work on the treatment plan and demonstrate compliance." Juvenile Court Opinion, 6/1/22, at 7 (citation omitted).

On March 2, 2022, the Agency filed a motion to change Child's permanency goal from reunification to adoption. The Agency averred that Mother "has had no compliance with her Court-ordered treatment plan." Motion to Change Permanency Goal, 3/2/22, at 1. The juvenile court held a hearing on March 30, 2022, at which the Agency presented testimony from their caseworker, Sandra Tate. Mother (and Father) also testified. At the conclusion of the hearing, the juvenile court stated:

> [The Agency] could not have been more deferential or assisting and none of that was taken advantage of by [M]other.
>
> For the best interest of this child and knowing all the reasons I've set forth on this record, the court summary, the other reports, the responses to the questions provided here, I'm going to change the goal to adoption.

N.T., 3/30/22, at 62.

On April 5, 2022, the court entered an order changing Child's goal to adoption. Mother timely filed a notice of appeal and a Pa.R.A.P. 1925(a)(2)(i) concise statement. Mother raises the following issue:

> WHETHER THE JUVENILE COURT COMMITTED AN ABUSE OF DISCRETION AND/OR ERROR OF LAW WHEN IT DETERMINED

THAT THE PERMANENCY GOAL OF REUNIFICATION WAS NO LONGER FEASIBLE AND CHANGED THE GOAL DIRECTLY TO ADOPTION?

Mother's Brief at 3.

We review an order regarding a placement goal of a dependent child for an abuse of discretion. *In re B.S.,* 861 A.2d 974, 976 (Pa. Super. 2004). To conclude that the trial court abused its discretion, we "must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." *In re N.C.* 909 A.2d 818, 822-23 (Pa. Super. 2006) (citation and internal quotation marks omitted). In addition, we are bound by the facts as found by the trial court if they are supported by the record. *In re K.J.*, 27 A.3d 236, 241 (Pa. Super. 2011). It is the responsibility of the trial court to evaluate the credibility of witnesses and resolve any conflicts in testimony. *In re N.C.*, *supra* at 823. Therefore, "the trial court is free to believe all, part, or none of the evidence." *Id.* (citation omitted). If the court's findings are supported by competent evidence, this Court will affirm, "even if the record could also support an opposite result." *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa. Super. 2006) (citation omitted).

The focus of all dependency proceedings, including goal change proceedings, is on the safety, permanency, and well-being of the child; the child's best interest must take precedence over all other considerations. *In*

*re A.K.*, 936 A.2d 528, 534 (Pa. Super. 2007). At the dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the child's placement, and the appropriateness and feasibility of the child's current placement goal. 42 Pa.C.S.A. § 6351(f)(1), (4). If reunification is not in the child's best interest, the court may determine that adoption is the appropriate permanency goal. *See* 42 Pa.C.S.A. § 6351(f.1)(2). "This Court has held that the placement process should be completed within 18 months." *In re N.C., supra* at 823 (citation omitted). "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003).

Instantly, Mother argues the juvenile court abused its discretion by changing Child's permanency goal to adoption, "without implementing the customary intermediate goal of reunification concurrent with adoption." Mother's Brief at 6. Mother provides little support for this argument, and improperly views the evidence in her favor. *See* Mother's Brief at 8-11. Mother concedes she "did not follow through" with drug and alcohol treatment, but claims "the record clearly indicates an acknowledgement of need of services coupled with a ready willingness to reengage." *Id.* at 9. She also acknowledges she "did not follow through with services" for mental health treatment, but emphasizes that "the record indicates a willingness to reengage." *Id.* Likewise, Mother admits she "has not yet participated in an

approved parenting program" and "has been unable to find appropriate housing," but claims the juvenile court erred in viewing her actions as "not worthy of additional time." *Id.* at 10. Mother disregards the juvenile court's authority. *See, e.g., In re N.C.* 909 A.2d at 823 ("The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony.").

In contrast, Child's guardian *ad litem* argues the goal change to adoption is in Child's best interest, and "supported in fact and in law." Appellee Brief at 9 ("Despite a finding of aggravated circumstances, Mother was given the chance and provided [with] resources … but chose not to [participate] and was found to be totally non-compliant.").

The Agency has not filed a brief, but advised this Court of its agreement with the juvenile court's "well-reasoned" opinion. Letter, 7/20/22. In its opinion, the juvenile court stated it had considered "the entire facts and circumstances of this matter, including Mother's lengthy ten (10) year history with the Agency," in determining that the goal change to adoption was "best suited to the safety, protection and … welfare of the child." Juvenile Court Opinion, 6/1/22, at 23 (citation omitted). The court explained,

> reasonable efforts were made by the Agency to finalize [Child's] permanency plans. ... Crucially, the [c]ourt found [Mother] has not been compliant with the permanency plan, and had not made any progress toward alleviating the circumstances which necessitated [Child's] original placement. In fact, Mother's history indicates that the same reasons which resulted in her parental rights being terminated for four (4) children in November 2019 still exist in the current dependency matter. Specifically, there

- 6 -

are ongoing concerns with [Mother's] mental health (including bipolar disorder, cannabis-related disorder, major depressive [disorder] with severe psychotic features, mood disorder, and anxiety), drug use, unstable housing, and parenting skills, including her ability to keep [Child] safe. …

Mother's non-compliance includes her failure to not follow through with her mental health treatment as evidenced by her discharge from Stairways Behavioral Health for excessive nonattendance.  Mother presents with very serious mental health diagnoses including: Bipolar disorder, Cannabis Related Disorder, Cocaine Related Disorder, Major Depressive/Single Episode/Severe with Psychotic Features [disorder], Episodic Mood Disorders, and Anxiety.

Next, there are continued concerns about [Mother's] ability to keep [C]hild safe, as illustrated by her unstable living situation.  Mother was residing with a man (Mr. Brewington), who she was involved in a domestic dispute with, and in a residence where she has no legal standing.  Mother is not on the lease and the property is exclusively owned by Mr. Brewington.  In other words, Mother could be evicted at any time from this residence without legal recourse or claim to stay.  Additionally, the Agency had also determined that Mr. Brewington's home is not safe for [C]hild.  Mother also had several no-show positive test results and was receiving no drug and alcohol treatment despite her diagnoses of Cocaine Use Disorder and Cannabis Use Disorder.

Consequently, the circumstances which necessitated the placement of [C]hild, including [Mother's in]ability to safely parent []; her unstable housing; concerns about her mental health; and concerns about her drug and alcohol use, have not been alleviated.  [Mother] remains in virtually the same position as she was in September 2021, when [Child] was first removed and adjudicated dependent.  The history of Mother's involvement with the Agency would actually suggest Mother remains in the same position as she was back in 2012 when she first became involved with the Agency with her four (4) children resulting in the involuntary termination of her parental rights.  … **[Mother] throughout her history makes promises that she will comply but then fails**.  Mother, although well intended, has failed to support her statements by actions and comply with the [c]ourt's plan.  Mother admitted she was "selfish" and [therefore], the child is left without proper parental care.  The [c]ourt finds

Mother's excuse for non-compliance that she was being "selfish" to be wholly unacceptable and unpersuasive regarding her "renewed" intention to adequately parent [Child] …

The collective evidence presented indicates [C]hild is in desperate need of permanency and stability. … The Agency's caseworker, Ms. Tate, received a resource family report from the foster family saying [Child] has established a bond with their family. The foster home has greatly impacted [Child's] quality of life. While in Mother's care, [Child] was diagnosed with high lead levels which have since decreased since being in his foster home. Also while with Mother, [Child] was three (3) immunizations behind on his yearly shots due to several missed doctor appointments. Since being placed in foster care, [Child] is up to date on all his immunizations. The foster home is meeting the [C]hild's needs and providing him with a safe, stable, and loving home environment.

In consideration of the evidence and testimony presented, the [c]ourt found the Agency had met its burden in demonstrating that a goal change to adoption is in [C]hild's best interest. [C]hild's physical and emotional needs are being treated and met. [Mother] has failed to "alleviate the circumstances which necessitated the original placement" and has demonstrated, at most, minimal compliance with treatment plans designed to effectuate reunification. Mother's lack of any meaningful or even marginal compliance, unfortunately, exposes the harsh reality that Mother is ill-equipped to safely parent [C]hild.

Juvenile Court Opinion, 6/1/22, at 23-25 (citations omitted).

Our review reveals ample support in the record for the juvenile court's determination that the Agency's efforts at reunification have failed, and a goal of adoption would serve Child's best interest. Accordingly, the juvenile court did not abuse its discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/7/2022